**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GARY G.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>*Commissioner of Social Security*,[2]<br><br>Defendant. | Case No. 24-cv-3144-MJS |

**MEMORANDUM OPINION**

The Social Security Administration denied Gary G.'s ("Mr. G") application for benefits. Through this case, Mr. G now presses a single argument for reversal: that the ALJ failed to properly consider and explain the reasons for rejecting his medical provider's opinion that he was *markedly* limited in certain areas of functioning. This argument misses the mark. For the reasons explained, the ALJ's rationale behind that finding is adequately reflected in the decision and supported by substantial evidence. So, the Court **DENIES** Mr. G's motion for judgment of reversal (ECF No. 7) and **GRANTS** the Commissioner's motion for judgment of affirmance (ECF No. 10).

**RELEVANT BACKGROUND**

Mr. G applied for disability insurance benefits and supplemental security income benefits in 2021, alleging disability due to depression, mood disorder, chronic obstructive pulmonary disorder ("COPD"), diabetes, and hypogonadism. (ECF No. 5, Administrative Record ("AR") at

---

[1] Per recommended practice, the Court partially redacts Plaintiff's name. *See* Privacy Concern Regarding Social Security and Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (advising use of "only the first name and last initial" in Social Security cases).

[2] The current Commissioner is automatically substituted as the named defendant. Fed. R. Civ. P. 25(d).

262–325, 366, 390.)[3] After review of those applications, the state agency denied Mr. G's claims. (*Id.* at 87–136.) He then requested a hearing before an Administrative Law Judge. At the hearing, during which Mr. G was represented by counsel, the ALJ considered testimony from Mr. G and a vocational expert, alongside a range of documentary evidence. (*Id.* at 54–86.) The ALJ thereafter issued a decision finding that Mr. G was not disabled under the Act. (*Id.* at 11–26.)

Relevant here, the ALJ found the opinion of his medical provider—Judith Tangi, RN ("RN Tangi")—only "somewhat persuasive." (*Id.* at 23–24.)[4] RN Tangi's opinion came in form of a report that included a "Mental Functional Capacities Assessment" for Mr. G. In that assessment, she indicated that five areas (out of twenty total) implicated "marked" limitations, specifically related to his ability to: (i) "maintain attention and concentration for extended periods"; (ii) "work in coordination with or proximity to others without being distracted by them"; (iii) "accept instructions or respond appropriately to criticism from supervisors"; (iv) "respond appropriately to customary stresses in a work setting"; and (v) "set realistic goals or make plans independently of others." (*Id.* at 1515–16.) The remaining areas reflected only "mild" or "moderate" limitations. (*See id.*) The ALJ discounted the weight of RN Tangi's report because although it "provided background information regarding [Mr. G's] diagnoses and reported symptoms, she failed to provide any rationale for the functional limitations provided, which renders her opinion less persuasive." (*Id.* at 23.) The ALJ stated that the "marked" findings, in particular, were "inconsistent with" some of RN Tangi's other "mental status findings" and "unsupported by [Mr. G's] admitted ability to spend a lot of time playing video games as well as his general

[3] Page citations to the AR refer to the running pagination at the lower right margin. Page citations to the parties' briefing, by contrast, refer to the ones assigned by the Court's electronic filing system.

[4] Based on the record, Mr. G visited RN Tangi three times for mental health counseling. (AR at 1433–43.)

independence with daily activities." (*Id.* at 23–24.) But the ALJ did credit RN Tangi's "finding of moderate limitation in the areas of mental functioning." (*Id.* at 24.)

After the Appeals Council denied Mr. G's request for further review, he timely filed for judicial review under 42 U.S.C. § 405(g). He now moves for a judgment of reversal, arguing that the ALJ "failed to properly consider and explain the rejection" of the opinion of RN Tangi that he suffers from "marked" limitations in several categories of functioning. (*See* ECF No. 7-1 ("Pl.'s Mot.") at 10.) In response, the Commissioner cross-moves for judgment of affirmance. (ECF No. 11 ("Opp'n").) The matters are fully briefed and ripe for decision.

**LEGAL STANDARD**

In Social Security cases, "[t]he Commissioner's 'ultimate determination' about entitlement to benefits 'will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards.'" *Cox v. Kijakazi*, 77 F.4th 983, 990 (D.C. Cir. 2023) (quoting *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004)). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations and quotation marks omitted); *see also Butler*, 353 F.3d at 999 (describing substantial evidence as "more than a scintilla, but … less than a preponderance"). The Court must "carefully scrutinize" the record for substantial evidence but may not reweigh the evidence itself, *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 32 (D.D.C. 2014) (citation and quotation marks omitted), as judicial review in this context is "highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). When an ALJ denies benefits, they must build an "accurate and logical bridge" from the evidence to their conclusions so the Court can assess whether a connection exists between

the evidence and the ALJ's conclusions. *Lane–Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

**DISCUSSION**

In attacking the ALJ's decision, Mr. G exclusively faults the ALJ's treatment and consideration of RN Tangi's opinion—arguing that the ALJ did not properly evaluate RN Tangi's "marked" limitation findings when analyzing Mr. G's residual functional capacity ("RFC"). (Pl.'s Mot. at 10–13.)[5] The Commissioner insists otherwise, defending the ALJ's decision as supported by substantial evidence. (Opp'n at 14–18.) The Commissioner is correct.

An ALJ is required to evaluate the persuasiveness of medical opinions against five factors: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). Of these factors, supportability and consistency are the "most important." *Id.* §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). "Supportability" focuses on how "the objective medical evidence and supporting explanations presented by a medical source" supports the opinion, while "consistency" looks at how strongly a medical opinion lines up with "evidence from other medical sources and nonmedical sources." *See id.* §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). In other words, the "supportability factor is an *internal check* that references objective medical evidence and supporting explanations that come

[5] Benefit claims under the Act are assessed through a five-step analysis whereby an ALJ evaluates whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) could return to past relevant work; and (5) if not, could perform any other work in the national economy. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (describing each step); 20 C.F.R. §§ 404.1520(a), 416.920(a) (articulating five-step analysis for disability insurance benefits and supplemental social security, respectively). Mr. G's argument bears on steps four and five because it implicates the ALJ's assessment of his residual functional capacity—or "RFC," in Social Security parlance—an assessment that captures the most "an individual can do despite his … limitations." *See* Social Security Ruling 96–8p, 1996 WL 374184, at *1 (July 2, 1996).

from *the source itself*, whereas the consistency factor is an *external check* that references evidence from *other medical and nonmedical sources*." *Tracey L. v. King*, 2025 WL 1276804, at *4 (D.D.C. Jan. 23, 2025) (quoting *Bright v. Saul*, 2020 WL 4483008, at * 3 (M.D.N.C. Aug. 4, 2020)). An ALJ must explain their consideration of these factors, but "there is no specific format required"; an ALJ does not even need to use the terms "supportability" and "consistency" expressly, so long as "there is sufficient explanation for a reviewing court to determine that the ALJ analyzed those factors." *David W. v. Kijakazi*, 2023 WL 5035935, at *11 (D.D.C. Aug. 8, 2023) (collecting cases).

Applied here, these principles reflect that the ALJ appropriately considered the necessary supportability and consistency factors in assessing RN Tangi's opinion.

Start with supportability. On this factor, the ALJ decision identified two considerations that undermined, in the ALJ's view, the persuasiveness of RN Tangi's opinion: (1) her report did not provide "any rationale" for the identified limitations in Mr. G's mental health functioning; and (2) the "marked" limitations were not consistent with her own treatment notes. (AR at 23–24.)

The first consideration finds support in the record. RN Tangi's assessment was essentially limited to a check-the-box assessment across different areas of functioning, without any explanatory support or additional context underlying any of the specific designations. (*See* AR at 1515–16.) The ALJ's decision to discount, at least somewhat, the weight of the opinion on this basis was not unreasonable. *Cf. Tyrone G. v. O'Malley*, 2024 WL 1509026, at *10 (D.D.C. Feb. 16, 2024) (observing that medical opinions are generally more persuasive when they go beyond "brief conclusory statements or the mere checking of boxes denoting levels of residual functional capacity") (quoting *Joyner v. Colvin*, 2014 WL 12769266, at *13 (D. Mass. Dec. 12, 2014)), *report and recommendation adopted sub nom.*, *Graham v. O'Malley*, 2024 WL 1508825 (D.D.C. Mar. 4, 2024). Mr. G's briefing fails to even grapple with this aspect of the ALJ's analysis.

As to the second point, Mr. G does not dispute that the ALJ referenced inconsistencies in RN Tangi's treatment notes as a reason for discounting her opinion that Mr. G had several "marked" limitations. Instead, he criticizes that point as being too "conclusory" and generally argues that the treatment notes are not contradictory. (*See* Opp'n at 15.) The first rejoinder misses the mark because the ALJ specified details of the treatment notes that the ALJ viewed as inconsistent, including prior findings of "cooperative behavior, goal-directed thought process, clear speech, normal mood, appropriate affect and thought content, good insight, intact memory, and normal attention, judgment, and perception about mental health." (AR at 23–24.) That is enough for the Court to discern the ALJ's reasoning and so takes the ALJ's point beyond a mere conclusory remark. Otherwise, Mr. G disputes the importance of certain details from the treatment notes, mostly to contest the relevance of findings and observations in a medical visit setting as applied to a workplace environment. But that is essentially asking the Court to weigh the evidence itself, which it cannot do. *See, e.g.*, *Butler*, 353 F.3d at 999; *Gibson v. Kijakazi*, 643 F. Supp. 3d 78, 88 (D.D.C. 2022) ("The Court cannot reweigh the evidence.") (citation modified).

Turning to the consistency factor, the ALJ's decision reflects several relevant points that the ALJ considered, including: (1) Mr. G's own testimony about his "general independence with daily activities"; and (2) the other medical opinions introduced into the record. (AR at 22–24.)

On the first point, Mr. G argues that "the ALJ never actually describes what 'daily activities'" were being referenced, which means the ALJ did not "provide an accurate and logical bridge between the evidence and her conclusion." (Pl.'s Mot. at 13 (citation omitted).) This argument is unavailing because the ALJ described throughout the decision the underlying "daily activities" that Mr. G performed with relative independence, including Mr. G's ability to: "do art, play sports, go on social media, play video games, and handle his finances, email account, and

medical care" (AR at 15); "tolerate others while at home, in public, at doctor's appointments, as well as while performing [other] activities of daily living" (*id.* at 15–16); "obtain and sustain employment as well as pay bills, shop for himself, prepare meals, and generally care for himself independently" at certain points (*id.* at 19); and "do activities[] and ride his bike to Baltimore to cope with his depressive symptoms" (*id* at 20). Although the ALJ did not specifically restate all these facts again in the section addressing RN Tangi's opinion, the ALJ was not required to do so. *See, e.g.*, *Colter v. Kijakazi*, 2022 WL 715218, at *11 (D.D.C. Mar. 10, 2022) (noting that an ALJ need not "encompass the entirety of [their] analysis in any particular paragraph of [the] decision," as long as they "provide a sufficient basis for this Court to understand [their] reasoning when viewing the decision as a whole") (citation omitted). Read as a whole, the decision fairly reflects the ALJ's rationale on this point, and that is sufficient to create a logical bridge.

Otherwise, Mr. G again resorts to arguing why the evidence surrounding his daily activities in non-work contexts is largely immaterial to his ability to "sustain work-related physical and mental activities in a work setting on a regular and continuing basis." (Pl.'s Mot. at 13.) But courts in this District routinely acknowledge that ALJs may look to a claimant's daily and household activities "to draw conclusions about a person's abilities in the labor market." *Thompson v. Kijakazi*, 2024 WL 4183211, at *9 (D.D.C. June 6, 2024) (quoting *Deskins v. Kijakazi*, 2023 WL 3721470, at *7 (D.D.C. May 30, 2023)). And beyond that, Mr. G's arguments once again boil down to a request that the Court second-guess the ALJ's assessment of the record evidence, which the Court is not permitted to do. *Butler*, 353 F.3d at 999; *Gibson*, 643 F. Supp. 3d at 88.

As to the second consideration, the ALJ's analysis of RN Tangi's opinion takes place within a broader discussion of all the relevant medical opinion evidence (*see* AR at 22–24), and the ALJ's comparative treatment of that category of evidence reflects that the persuasiveness of

RN Tangi's opinion on "marked" limitations was undermined by its inconsistency with other medical evidence that the ALJ found more persuasive. Specifically, just a few paragraphs before addressing RN Tangi's opinion, the ALJ explained—in reasonably detailed terms—that the opinions of the state agency psychological consultants were "persuasive" insofar as they concluded that Mr. G was "moderately limited in all areas of mental functioning." (*Id.* at 22–23.) Although the ALJ decision "did not make an explicit comparison" between those opinions and RN Tangi's heightened findings in certain areas, *see Grant v. Astrue*, 857 F. Supp. 2d 146, 153 (D.D.C. 2012), the relative weight that the ALJ afforded to each opinion is unmistakable. *See id.* at 153–54. And that aspect of the ALJ's decision provides additional and reasonable support—from a consistency perspective—for the ALJ's reluctance to adopt RN Tangi's opinions in all respects.

* * *

In sum, the ALJ's discussion of RN Tangi's opinion was appropriate—including on the necessary analytical factors of supportability and consistency—and substantial evidence supports the ALJ's reasoning. Mr. G's arguments to the contrary come up short. And because this is the only aspect of the ALJ decision that Mr. G attacks, he fails to demonstrate any basis for reversal.

## CONCLUSION

For these reasons, the Court **DENIES** Mr. G's motion for judgment of reversal (ECF No.7) and **GRANTS** the Commissioner's cross-motion for judgment of affirmance (ECF No. 10). The Court will issue a separate order so stating.

Dated: September 30, 2026

MATTHEW J. SHARBAUGH
United States Magistrate Judge